**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHRISTIAN DIOR COUTURE, S.A., | |
| Plaintiff, | Case No. 23-cv-00994 |
| v. | |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," | |
| Defendants. | |

**COMPLAINT**

Plaintiff Christian Dior Couture, S.A. ("Dior") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases").  Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold products using infringing and counterfeit versions of Dior's federally registered trademarks, copyrighted designs, or both to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Dior substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Dior to combat e-commerce store operators who trade upon Dior's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including clothing and fashion accessories, using infringing and counterfeit versions of Dior's federally registered trademarks, unauthorized copies of Dior's federally registered copyrighted designs, or both (collectively, the "Unauthorized Dior Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Unauthorized Dior Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Dior is forced to file this action to combat Defendants' counterfeiting of its registered trademarks and infringement of its registered copyrighted designs, as well as to protect unknowing consumers from purchasing Unauthorized Dior Products over the Internet. Dior has been and continues to be irreparably damaged through

2

consumer confusion, dilution, and tarnishment of its valuable trademarks and infringement of its copyrighted designs as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4.     Dior is organized and existing under the laws of France with its principal place of business in Paris, France.

5.     Dior is a world-famous couturier engaged in the business of styling and selling diverse articles of men's and women's apparel and fashion accessories.  Dior is famous for its leadership, style, excellence, and quality in the field of fashion, and is widely recognized as one of the principal style innovators and leaders in the fashion field.  Dior is engaged in the manufacture, sale and distribution of prestigious, high-quality, luxury merchandise, including a wide variety of clothing and fashion accessories, eyewear, leather goods, jewelry, watches and other similar items sold throughout the United States (collectively, the "Dior Products"), all of which prominently display its famous, internationally-recognized and federally-registered trademarks, including

CHRISTIAN DIOR, DIOR, CD, and  (the "Cannage Design").  Dior Products have become enormously popular and even iconic, driven by Dior's arduous quality standards and innovative designs.   Among the purchasing public, genuine Dior Products are instantly recognizable as such.  In the United States and around the world, the Dior brand has come to symbolize high quality, and Dior Products are among the most recognizable of their kind in the world.

6.     Dior Products are distributed and sold to consumers through retailers throughout the United States in company-operated Dior boutiques and in high-quality department stores in Illinois such as Barneys, Bloomingdales, Nordstrom, Neiman Marcus, and Saks Fifth Avenue.

7.     Dior incorporates a variety of distinctive marks in the design of its various Dior Products.  As a result of its long-standing use, Dior owns common law trademark rights in its trademarks.  Dior has also registered its trademarks with the United States Patent and Trademark Office.  Dior Products typically include at least one of Dior's registered trademarks.  Often several Dior marks are displayed on a single product.  Dior uses its trademarks in connection with the marketing of its Dior Products, including the following marks which are collectively referred to as the "CHRISTIAN DIOR Trademarks."

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 543,994 | CHRISTIAN DIOR | June 19, 1951 | For: Handbags and pocketbooks in Class 018. |
| 580,207 | CHRISTIAN DIOR | September 22, 1953 | For: Jewelry for personal wear, not including watches-namely, trinkets, necklaces, bracelets, finger rings, earrings, brooches, and ornamental clips made in whole of, in part of, or plated with precious metals in class 014. |
| 954,404 | CHRISTIAN DIOR | March 6, 1973 | For: Eyeglass frames, sunglasses and eyeglass cases in Class 009. |
| 1,123,944 | CD | August 14, 1979 | For: Optical apparatus – namely, eyeglass frames in Class 009. |

4

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | For: Jewelry and horological instruments – namely, women's costume jewelry, bracelets, and watches for men and women in Class 014.<br><br>For: Articles made from leather and imitations thereof, namely, luggage for men and women in Class 018.<br><br>For: Women's blouses, skirts, dresses, jackets, suits, coats; Men's suits, belts and sport jackets in Class 025. |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 1,776,536 |  | June 15, 1993 | For: Carry-on bags; change purses; clutch bags; clutch purses; golf umbrellas; handbags; luggage; passport cases, holders or wallets; pocketbooks; purses; shoulder bags; all-purpose sports bags; suitcases; tote bags; travel bags; and wallets in Class 018.<br><br>For: Clothing for use by men, women and children; namely, blouses; gloves; vests in Class 025. |
| 1,872,313 |  | January 10, 1995 | For: Eyeglass frames and parts thereof; sunglasses in Class 009.<br><br>For: Rings in Class 014. |
| 1,923,564 | Dior | October 3, 1995 | For: Belt buckles of precious metals for clothing; brooches; charms; costume jewelry; ear clips; jewelry; jewelry lapel pins; ornamental pins; pendants; watch bands; watch |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | chains; watch fobs; and watches in Class 014.<br><br>For: billfolds; business card cases; carry-on bags; change purses; clutch bags; clutch purses; coin purses; credit card cases; drawstring pouches; handbags; key cases; overnight bags; passport cases, holders or wallets; purses; shoulder bags; and wallets in Class 018. |
| 2,240,163 |  | April 20, 1999 | For: clutch bags, change purses, pocketbooks, purses, wallets in class 018. |
| 3,561,323 | Dior | January 13, 2009 | For: optical apparatus and instruments, namely, spectacles, sunglasses, spectacle cases, and spectacle frames in Class 009. |

7

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 2,749,176 |  | August 12, 2003 | For: Athletic bags; attache cases; baby carriers worn on the body; backpacks; beach bags; beach umbrellas; billfolds; book bags; briefcase-type portfolios; briefcases; business card cases; carry-on bags; non-motorized collapsible luggage carts; change purses; clutch bags; clutch purses; coin purses; cosmetic cases sold empty; credit card cases; diaper bags; document cases; drawstring pouches; duffel bags; fanny packs; felt pouches; garment bags for travel; golf umbrellas; gym bags; handbags; hat boxes for travel; key cases; knapsacks; luggage; overnight bags; overnight cases; parasols; passport cases, holders and wallets; patio umbrellas; |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | pocketbooks; purses; satchels; school bags; shoe bags for travel; leather shopping bags; mesh shopping bags; textile shopping bags; shoulder bags; all-purpose sports bags; suitcases; toiletry cases sold empty; tote bags; travel bags; trunks for traveling; umbrellas; valises; vanity cases sold empty; waist packs; wallets in Class 018.<br><br>For: Clothing for use by men, women and children; namely, anoraks; aprons; ascots; babushkas; bandannas; bathing suits; bathrobes; belts; blazers; blouses; blousons; bodysuits; boleros; boots; boxer shorts; brassieres; briefs; baby buntings; caftans; camisoles; capes; caps; cardigans; chemises; clogs; cloth diapers; fur coats; suit coats; |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | top coats; corselets; culottes; dresses; earmuffs; galoshes; garter belts; girdles; gloves; nightgowns; halter tops; hats; headbands; hosiery; jackets; jeans; jogging suits; jumpers; jumpsuits; kerchiefs; kimonos; leggings; leotards; loungewear; mittens; moccasins; mufflers; neckerchiefs; neckties; neckwear; negligees; nightshirts; overalls; overcoats; overshoes; pajamas; panties; pants; pantsuits; pantyhose; parkas; pedal pushers; peignoirs; pinafores; playsuits; pocket squares; ponchos; pullovers; raincoats; sandals; scarves; shawls; shirts; shorts; undershirts; shoes; sweat shorts; skirts; ski suits; slacks; snowsuits; |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | socks; sport coats; sport shirts; stockings; stoles; suits; suspenders; sweat pants; sweatshirts; sweaters; t-shirts; trousers; tuxedos; underpants; vests; vested suits; and warm-up suits in Class 025. |
| 5,173,476 | DIOR SO REAL | April 4, 2017 | For: Eyeglasses, sunglasses, goggles for sports; spectacle frames, spectacle cases; containers for contact lenses; protective cases, bags, satchels and covers for computers, tablets, mobile telephones and MP3 players in Class 009.<br><br>For: Jewelry; precious stones; precious metals and their alloys, jewelry bracelets, jewelry brooches, jewelry necklaces, jewelry chains, medals, pendants, earrings, rings, charms, tie pins; cuff links; key rings of precious metals; jewelry cases; boxes of |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | precious metal; boxes, cases and presentation cases for timepieces and jewelry; timepieces, chronometric instruments, watches, watch bands in Class 014.<br><br>For: Leather and imitation leather; animal skins and furs; trunks and suitcases; wallets; coin purses; credit card holders; briefcases of leather or imitation leather; key cases of leather or imitation leather; garment bags for travel; all-purpose carrying bags, backpacks, handbags, traveling bags; vanity cases sold empty; clutch bags of leather; toiletry and make-up bags sold empty; boxes of leather; umbrellas in Class 018. |
| 5,505,434 | J'ADIOR | July 3, 2018 | For: Eyeglasses, sunglasses, goggles for sports; spectacle frames, |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | spectacle cases; protective cases, bags, satchels and covers for computers, tablets, mobile telephones and MP3 players; cases for telephones, protective cases for telephones in Class 009.<br><br>For: Jewelry, jewelry articles; precious and semi-precious stones; pearls; precious metals and their alloys; items of jewelry, namely, bracelets, brooches, necklaces, chains, medals, pendants, earrings, rings, and charms; tie pins; cuff links; key rings; jewelry cases; boxes of precious metals; presentation boxes and cases for jewelry and timepieces; timepieces; chronometric instruments; watches; watch bands; watch dials; chronographs in Class 014. |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | **For:** Leather and imitation leather; animal skins and fur pelts; trunks and suitcases; wallets; coin purses; credit card holders; briefcases of leather or imitation leather; attaché cases and document cases of leather and imitation leather; protective covers for clothing, namely, garment bags for travel; key cases of leather or imitation leather; all-purpose carrier bags; backpacks; handbags; traveling bags; vanity cases sold empty; clutch bags of leather; traveling sets being luggage of leather; toiletry and make-up bags sold empty; leather boxes not being jewelry boxes; umbrellas; shoulder belts of leather in Class 018.<br><br>**For:** Clothing, namely, layettes, bibs not of paper, |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | bath robes, bathing suits, shorts, belts, suspenders, blouses, cardigans, trousers, overalls, combinations, shirts, t-shirts, skirts, polo shirts, pullovers, vests, dresses, coats, tailleurs, parkas, overcoats, blousons, jackets, underwear, furs being clothing, wedding dresses, gloves, mittens, scarves, stoles, sashes for wear, shawls, neckties, collars, caps, hats, visors, hosiery, men's suits, ponchos, raincoats, socks, tights, leggings, pajamas, tracksuits, cuffs, and bedroom slippers; footwear; beach, ski, and sports footwear; boots; ankle boots; sandals; pumps being footwear; esparto shoes and sandals; headbands; headwear; headgear being knitted caps; clothing for |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | sports, namely, shorts and shirts; clothing for children, namely, hats, shorts, dresses, and shoes in Class 025. |
| 3,002,132 |  | September 27, 2005 | For: Jewelry; jewelry chains; charms, medals; pins being jewelry in Class 014. |
| 2,790,589 |  | December 9, 2003 | For: Optical apparatus and instruments, namely, spectacles, sunglasses in Class 009.<br><br>For: Precious metals in general and their alloys sold in bulk; precious metals and their alloys sold at retail; jewelry, charms, medals in Class 014.<br><br>For: Clothing for use by men, namely, blousons; boxer shorts; cardigans; neckties; neckwear; pants; pullovers; scarves; shirts; shorts; |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | sweat shorts; sport shirts; sweatshirts; sweaters; t-shirts; trousers in Class 025. |
| 4,541,171 |  | June 3, 2014 | For: Spectacles being optics; optical goods, namely, spectacles, sunglasses, anti-glare goggles for use in sports, sports eyewear, spectacle cases; telephone peripherals, namely, cases, telephone earphones and microphones in Class 009. For: Jewelry; precious and semi-precious stones and imitations thereof, timepieces and chronometric instruments, precious metals and alloys thereof; works of art of precious metal; jewelry cases of precious metal; boxes of precious metal; watch cases, bracelets, chains, springs or glasses; key rings being trinkets or |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | fobs of precious metal; cases or presentation cases, namely, boxes for timepieces; medals; charms; earrings made of precious metals in Class 014.<br><br>For: Leather and imitations of leather; trunks and suitcases; wallets; purses, namely, coin purses; handbags, backpacks, wheeled bags; bags for climbers and campers in the nature of all-purpose carrying bags; travel bags, beach bags, school bags; card cases being wallets; vanity cases sold empty; key cases as leather goods; textile bags or mesh bags for shopping; bags or small bags, namely, envelopes, pouches of leather for packaging in Class 018.<br><br>For: Clothing, namely, t-shirts, |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | blouses, jeans, pants, socks, shorts, underwear, shirts, neckties, sweaters, pullovers, skirts, trousers, coats, jackets, rainproof jackets and coats, scarves, waistcoats, ski suits, swimming costumes; headgear, namely, hats, caps; leather or imitation leather clothing, namely, pants, dresses, skirts, trousers, coats, jackets, gloves; belts being clothing; fur coats; gloves being clothing in Class 025. |
| 4,853,081 | CD | November 17, 2015 | For: Spectacles; optical goods, namely, sunglasses, spectacle frames; telephone apparatus, namely, cases in Class 009.<br><br>For: Jewelry; charms; in Class 014.<br><br>For: Wallets; coin purses; handbags; backpacks; all- |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | purpose carrying bags; business card cases; unfitted vanity cases; small bags in the nature of envelopes and pouches of leather for packaging; envelopes and pouches of leather for packaging in Class 018.<br><br>For: Clothing, namely, shirts, skirts, footwear; leather clothing, namely, skirts, belts in Class 025. |
| 1,816,812 | Christian Dior | January 18, 1994 | For: address books; announcement cards; appointment books; business cards; copy paper; correspondence holders; date books; diaries; drawing pencils; envelopes; note books; note paper; packaging materials for packing; packing paper; paper bags paper clips; paper envelopes for packaging; paper gift wrapping ribbons printed emblems; printed |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | forms; printed labels not of textile; printing paper; reproduction paper; rubber stamps; stationery writing paper and envelopes in Class 016. |

8.     The CHRISTIAN DIOR Trademarks have been used exclusively and continuously in the U.S. by Dior and have never been abandoned.  The above U.S. registrations for the CHRISTIAN DIOR Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.  The registrations for the CHRISTIAN DIOR Trademarks constitute *prima facie* evidence of their validity and of Dior's exclusive right to use the CHRISTIAN DIOR Trademarks pursuant to 15 U.S.C. § 1057(b).  Attached hereto as **Exhibit 1** are true and correct copies of the U.S. Registration Certificates for the CHRISTIAN DIOR Trademarks included in the above table.

9.     The CHRISTIAN DIOR Trademarks are exclusive to Dior and are displayed extensively on Dior Products and in Dior's marketing and promotional materials.  Dior Products have long been among the most famous and popular of their kind in the world and have been extensively promoted and advertised at great expense.  In fact, Dior has expended millions of dollars annually in advertising, promoting and marketing featuring the CHRISTIAN DIOR Trademarks.  Dior Products have also been the subject of extensive unsolicited publicity resulting from their high quality and popularity among high profile celebrities who don Dior Products at red

carpet events. Because of these and other factors, the Dior name and the CHRISTIAN DIOR Trademarks have become famous throughout the United States.

10. The CHRISTIAN DIOR Trademarks are distinctive when applied to the Dior Products, signifying to the purchaser that the products come from Dior and are manufactured to Dior's quality standards. Whether Dior manufactures the products itself or licenses others to do so, Dior has ensured that products bearing its trademarks are manufactured to the highest quality standards. The CHRISTIAN DIOR Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks. As such, the goodwill associated with the CHRISTIAN DIOR Trademarks is of incalculable and inestimable value to Dior.

11. Since at least as early as 1999, Dior has operated a website where it promotes Dior Products at dior.com. Dior Products are featured and described on the website and, since 2001, some of them are available for purchase. The dior.com website features proprietary content, images, and designs exclusive to Dior.

12. Dior has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the CHRISTIAN DIOR Trademarks. As a result, products bearing the CHRISTIAN DIOR Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products from Dior. Dior is a multi-million-dollar operation, and Dior Products have become among the most popular of their kind in the world.

13. Dior has also registered many of its designs with the United States Copyright Office (the "Dior Copyrighted Designs"). The registrations include, but are not limited to: "BEE" (U.S. Copyright Registration No. VA 657-906), issued by the Register of Copyrights on June 17, 1994; "BEE" (U.S. Copyright Registration No. VA 655-762), issued by the Register of Copyrights on

June 17, 1994; "BEE" (U.S. Copyright Registration No. VA 657-903), issued by the Register of Copyrights on June 17, 1994; "BEE" (U.S. Copyright Registration No. VA 657-904), issued by the Register of Copyrights on June 17, 1994; and "BEE" (U.S. Copyright Registration No. VA 657-905), issued by the Register of Copyrights on June 17, 1994. True and correct copies of the U.S. federal copyright registration certificates for the above-referenced Dior Copyrighted Designs are attached hereto as **Exhibit 2**.

14.     Among the exclusive rights granted to Dior under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Dior Copyrighted Designs to the public.

15.     Since their first publication, the Dior Copyrighted Designs have been used on the Dior Products and are featured on Dior's website at dior.com. Dior Products featuring the Dior Copyrighted Designs are advertised on Dior's website at dior.com.

**The Defendants**

16.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Dior. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

17.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually

impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

18. The success of the Dior brand has resulted in significant counterfeiting of the CHRISTIAN DIOR Trademarks and copying of the Dior Copyrighted Designs. Consequently, Dior has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Dior has identified many fully interactive e-commerce stores offering Unauthorized Dior Products on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Walmart, Wish.com, DHgate, and Etsy, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According a to U.S. Customs and Border Protection report, in 2021, CBP made over 27,000 seizures of goods with intellectual property rights ("IPR") violations totaling over $3.3 billion, an increase of $2.0 billion from 2020. *Intellectual Property Rights Seizure Statistics, Fiscal Year 2021*, U.S. Customs and Border Protection (**Exhibit 3**). Of the 27,000 in total IPR seizures, over 24,000 came through international mail and express courier services (as opposed to containers), 51 percent of which originated from China and Hong Kong. *Id*.

19. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 Nw. J. Int'l L. & Bus. 157, 186 (2020); *see also*, report on "Combating Trafficking

24

in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (January 24, 2020) attached as **Exhibit 5** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 5** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 5** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 4** at 186-87.

20. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target U.S. consumers using one or more Seller Aliases, offer shipping to the U.S., including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold Unauthorized Dior Products to residents of Illinois.

21. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Dior has not licensed or authorized Defendants

to use any of the CHRISTIAN DIOR Trademarks or copy the Dior Copyrighted Designs, and none of the Defendants are authorized retailers of genuine Dior Products.

22.     Many Defendants also deceive unknowing consumers by using the CHRISTIAN DIOR Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Dior Products.  Other e-commerce stores operating under the Seller Aliases omit using CHRISTIAN DIOR Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Dior Products.

23.      E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

24.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Dior Products.  Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

25.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use.  E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration

26

patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Dior Products for sale by the Seller Aliases bear similar irregularities and indicia of being unauthorized to one another, suggesting that many of the Unauthorized Dior Products may be manufactured by and come from a common source and that Defendants are interrelated.

26.    E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

27.    Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Dior's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Dior. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

28.    Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Dior Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Dior, have jointly and severally, knowingly and willfully used and continue to use the CHRISTIAN DIOR Trademarks and/or copy the Dior Copyrighted Designs in connection with

the advertisement, distribution, offering for sale, and sale of Unauthorized Dior Products into the United States and Illinois over the Internet.

29.     Defendants' unauthorized use of the CHRISTIAN DIOR Trademarks and/or copies of the Dior Copyrighted Designs in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Dior Products, including the sale of Unauthorized Dior Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Dior.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

30.     Dior hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

31.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered CHRISTIAN DIOR Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  The CHRISTIAN DIOR Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from Dior Products offered, sold or marketed under the CHRISTIAN DIOR Trademarks.

32.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the CHRISTIAN DIOR Trademarks without Dior's permission.

33.     Dior is the exclusive owner of the CHRISTIAN DIOR Trademarks.  Dior's United States Registrations for the CHRISTIAN DIOR Trademarks (**Exhibit 1**) are in full force and effect.  On information and belief, Defendants have knowledge of Dior's rights in the CHRISTIAN DIOR Trademarks, and are willfully infringing and intentionally using counterfeits of the

CHRISTIAN DIOR Trademarks. Defendants' willful, intentional and unauthorized use of the CHRISTIAN DIOR Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Unauthorized Dior Products among the general public.

34.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

35.     Dior has no adequate remedy at law, and if Defendants' actions are not enjoined, Dior will continue to suffer irreparable harm to its reputation and the goodwill of its well-known CHRISTIAN DIOR Trademarks.

36.     The injuries and damages sustained by Dior have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Unauthorized Dior Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

37.     Dior hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

38.     Defendants' promotion, marketing, offering for sale, and sale of Unauthorized Dior Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Dior or the origin, sponsorship, or approval of Defendants' Unauthorized Dior Products by Dior.

39.     By using the CHRISTIAN DIOR Trademarks on the Unauthorized Dior Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Dior Products.

40.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Dior Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

41.     Dior has no adequate remedy at law and, if Defendants' actions are not enjoined, Dior will continue to suffer irreparable harm to its reputation and the goodwill of its Dior brand.

**COUNT III**
**COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT REGISTRATIONS (17 U.S.C. §§ 106 AND 501)**

42.     Dior hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

43.     The Dior Copyrighted Designs constitute original works and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. §§ 101, *et seq*.

44.     Dior has complied with the registration requirements of 17 U.S.C. § 411(a) for the Dior Copyrighted Designs.   The Dior Copyrighted Designs are protected by Copyright Registration Nos. VA 657-906, VA 655-762, VA 657-903, VA 657-904, and VA 657-905 which were duly issued to Dior by the United States Copyright Office.   At all relevant times, Dior has been and still is the owner of all rights, title, and interest in the Dior Copyrighted Designs, which have never been assigned, licensed, or otherwise transferred to Defendants.

45.     The Dior Copyrighted Designs are published on the internet and available to Defendants online.   As such, Defendants had access to the Dior Copyrighted Designs via the internet.

46.     Without authorization from Dior, or any right under the law, Defendants have deliberately copied, displayed, distributed, reproduced and/or made derivate works incorporating the Dior Copyrighted Designs on the e-commerce stores and the corresponding Unauthorized Dior

Products. Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of the Dior Copyrighted Designs. Such conduct infringes and continues to infringe the Dior Copyrighted Designs in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)-(3), (5).

47.     Defendants reap the benefits of the unauthorized copying and distribution of the Dior Copyrighted Designs in the form of revenue and other profits that are driven by the sale of Unauthorized Dior Products.

48.     The Defendants have unlawfully appropriated Dior's protectable expression by taking material of substance and value and creating Unauthorized Dior Products that capture the total concept and feel of the Dior Copyrighted Designs.

49.     On information and belief, the Defendants' infringement has been willful, intentional, and purposeful, and in disregard of and with indifference to, Dior's rights.

50.     The Defendants, by their actions, have damaged Dior in an amount to be determined at trial.

51.     Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Dior great and irreparable injury that cannot fully be compensated or measured in money. Dior has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Dior is entitled to a preliminary and permanent injunction prohibiting further infringement of the Dior Copyrighted Designs.

## PRAYER FOR RELIEF

WHEREFORE, Dior prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the CHRISTIAN DIOR Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Dior Product or is not authorized by Dior to be sold in connection with the CHRISTIAN DIOR Trademarks;

   b. reproducing, distributing copies of, making derivative works of, or publicly displaying the Dior Copyrighted Designs in any manner without the express authorization of Dior;

   c. passing off, inducing, or enabling others to sell or pass off any product as a genuine Dior Product or any other product produced by Dior, that is not Dior's or not produced under the authorization, control, or supervision of Dior and approved by Dior for sale under the CHRISTIAN DIOR Trademarks and/or the Dior Copyrighted Designs;

   d. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Dior Products are those sold under the authorization, control or supervision of Dior, or are sponsored by, approved by, or otherwise connected with Dior;

   e. further infringing the CHRISTIAN DIOR Trademarks and/or the Dior Copyrighted Designs and damaging Dior's goodwill; and

    f.   manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Dior, nor authorized by Dior to be sold or offered for sale, and which bear any of Dior's trademarks, including the CHRISTIAN DIOR Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof and/or which bear the Dior Copyrighted Designs;

2) Entry of an Order that, upon Dior's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Walmart, Wish.com, DHgate, and Etsy (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the CHRISTIAN DIOR Trademarks and/or which bear the Dior Copyrighted Designs;

3) That Defendants account for and pay to Dior all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the CHRISTIAN DIOR Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Dior be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the CHRISTIAN DIOR Trademarks;

5) As a direct and proximate result of Defendants' infringement of the Dior Copyrighted Designs, Dior is entitled to damages as well as Defendants' profits, pursuant to 17 U.S.C. § 504(b);

6) Alternatively, and at Dior's election prior to any final judgment being entered, Dior is entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed

pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

7) Dior is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505 and 17 U.S.C. § 1117(a); and

8) Award any and all other relief that this Court deems just and proper.

Dated this 17th day of February 2023.　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　/s/ Justin R. Gaudio
　　　　　　　　　　　　　　　　　　　　Amy C. Ziegler
　　　　　　　　　　　　　　　　　　　　Justin R. Gaudio
　　　　　　　　　　　　　　　　　　　　Kahlia R. Halpern
　　　　　　　　　　　　　　　　　　　　Berel Y. Lakovitsky
　　　　　　　　　　　　　　　　　　　　Greer, Burns & Crain, Ltd.
　　　　　　　　　　　　　　　　　　　　300 South Wacker Drive, Suite 2500
　　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60606
　　　　　　　　　　　　　　　　　　　　312.360.0080
　　　　　　　　　　　　　　　　　　　　312.360.9315 (facsimile)
　　　　　　　　　　　　　　　　　　　　aziegler@gbc.law
　　　　　　　　　　　　　　　　　　　　jgaudio@gbc.law
　　　　　　　　　　　　　　　　　　　　khalpern@gbc.law
　　　　　　　　　　　　　　　　　　　　blakovitsky@gbc.law

　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff Christian Dior Couture, S.A.*